1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY EUGENE SCALLY,<br>CDCR #G-67776,<br><br>                                    Plaintiff,<br><br>            vs.<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS AND<br>REHABILITATION and<br>CORRECTIONAL OFFICERS<br>A. FLORES and E. VEGA,<br><br>                                    Defendants. | Case No.:  22cv0182-DMS (MDD)<br><br><br>**ORDER SCREENING FIRST<br>AMENDED COMPLAINT<br>PURSUANT TO 28 U.S.C.<br>§§ 1915(e)(2)(B) & 1915A(b)** |

On February 7, 2022, Plaintiff Tony Eugene Scally, a state prisoner proceeding pro se, filed a Complaint pursuant to 42 U.S.C. § 1983.  (ECF No. 1.)  He claimed violations of his Fifth, Eighth and Fourteenth Amendment rights to due process, equal protection and to be free from cruel and unusual punishment, as well as negligence under state law, based on allegations he was found guilty of a prison disciplinary infraction for a false charge of possession of a deadly weapon which resulted in loss of custody credits, an administrative segregation placement, and referral for criminal prosecution carrying a possible life sentence.  (*Id*. at 3-5.)

On March 30, 2022, the Court granted Plaintiff leave to proceed in forma pauperis and dismissed the Complaint for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  (ECF No. 6.)  The Court found the Complaint did not state a § 1983 claim upon which relief could be granted because there were no allegations of unconstitutional conditions of confinement or that Plaintiff received unequal treatment or was denied any procedural protections in his disciplinary proceeding, and because his failure to allege his loss of custody credits was invalidated required dismissal of any claims which would necessarily result in his early release from custody.  (*Id.* at 5-10.)  The Court declined to exercise supplemental jurisdiction over the state law negligence claim, informed Plaintiff of the pleading deficiencies of his claims, and granted leave to amend.  (*Id.*)  He filed a First Amended Complaint ("FAC") on April 18, 2022.  (ECF No. 7.)

## I.    Screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A.    Standard of Review

Because Plaintiff is a prisoner and is proceeding in forma pauperis, the FAC requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  Under these statutes, the Court must *sua sponte* dismiss a prisoner's in forma pauperis complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding."  *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the

context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).")  Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted).  "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

## B.    Plaintiff's Allegations

Plaintiff alleges that on October 5, 2020, Defendants Correctional Officers Flores and Vega entered his cell and discovered an "altered razor," a state-issued razor with a bright orange handle added to it, which Plaintiff used to cut his hair.  (ECF No. 7 at 4.)  He states that Vega had previously seen Plaintiff using the razor to cut his hair failed to inform Flores of that fact, and that during the pandemic inmates have not been allowed to cut each other's hair and must cut their own hair.  (*Id.*; ECF No. 7-1 at 8.)

Plaintiff states that he was given three state-issued razors after breakfast on October 5, 2020, and "once I got my hair trimmed down I broke the guard off the state issued razor and reattached the blade to the razor handle to give myself a lineup.  The razor kept moving every time I attempted to line my hair, so I secured it with a piece of string to ensure that

it stayed in place." (*Id*.)  Plaintiff states he made no attempt to hide the razor and Vega knew it was not intended to be used as a weapon because he saw him using it to cut his hair.  (*Id*.)  He claims Flores failed to follow California Department of Corrections and Rehabilitation ("CDCR") policies, rules and regulations regarding possession of contraband by falsely charging him with a Rules Violation Report ("RVR") for possession of a deadly weapon even though there was no evidence he tried to use the razor as a weapon. (ECF No. 7 at 4.)  He contends that without such evidence he could only be charged with possession of contraband under CDCR regulations rather than possession of a deadly weapon, and he would not have been referred for criminal prosecution in the Imperial County Superior Court where he is facing a life sentence.  (*Id*.; ECF No. 7-1 at 9.)  Plaintiff alleges that:

> I am an African American Muslim and I believe that c/o Flores falsified her RVR report based on my racial ethnicity, my Islamic beliefs, and with the specific intent to retaliate against me for a civil lawsuit settlement I received $1,500 in 2018 for when I sued another correctional officer.  I believe that c/o E. Vega racially discriminated against me when he failed to inform c/o A. Flores that I was using my "altered razor" to cut my hair.  C/o E. Vega also retaliated against me when I was in the holding cage he attempted to extort me for information regarding where he could find a cell phone if I did not want to go to ASU for the altered razor.  I believe that because I did not tell c/o E. Vega where he could find a cellphone I was retaliated against and sent to ASU.  When I asked c/o E. Vega not to send me to ASU for simply altering a razor he replied "Give me something?! Tell me where I can find a cellphone in 2 building?!"  Because I was unable to provide c/o E. Vega with that information I was ultimately retaliated against and sent to ASU for 10 days.

(ECF No. 7 at 3.)  Plaintiff claims he was treated differently than other inmates and:

> I was singled out by these two officers because of my race, my religion, and the proximity of my release date that they could extort me for information and any refusal to cooperate would send me to ASU.  C/o A. Fores and E. Vega would never attempt to extort any Hispanic inmate for information because they know the repercussion that the southside gang members would initiate for such actions.  However Black inmates are threatened, extorted, bullied, and retaliated against methodically by c/os at Calipatria prison.

(*Id*. at 7.)

Plaintiff claims Flores and Vega failed to investigate or gather evidence showing he never intended to use the razor as a weapon and is currently seeking habeas relief to restore the 360 days of custody credits he lost in connection to the October 5, 2020, RVR No. 7034784.  (*Id.* at 3-4, 7-8.)  Plaintiff states he received another RVR, No. 7114746, on August 24, 2021, which also resulted in the loss of 360 days of custody credits, and that the disciplinary hearing on that RVR has been postponed and has not yet taken place.  (*Id.* at 7; ECF No. 7-1 at 2, 4.)  That second RVR was not referenced in the original Complaint nor was the CDCR named as a Defendant.  The CDCR is a Defendant in the FAC, with the only allegation being: "The department took 360 days of credit without giving me a hearing for RVR #7034784.  It did not give me a chance to present a defense or offer evidence. My due process was violated, and retaliation by CDCR."  (ECF No. 7 at 2.)

Plaintiff claims violations of his Fifth, Eighth and Fourteenth Amendment rights to due process, equal protection, and to be free from racial and religious discrimination, retaliation, and cruel and unusual punishment.  (*Id.* at 3-5.)  He seeks monetary damages and an injunction preventing Defendants from retaliating against him or falsifying documents against other inmates based on their race or religion.  (*Id.* at 10.)

## C.    Analysis

### 1.  Fourteenth Amendment Due Process Claim

Plaintiff first claims he was denied due process as protected by the Fifth and Fourteenth Amendments.[1]  The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty

---

[1]  Because the allegations in the FAC involve state actors only, it fails to state a Fifth Amendment claim.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) ("The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government - not to those of state or local governments."), citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981).

and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (and) (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000), quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

A prisoner is entitled to certain enumerated due process protections when charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003), citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* at 1077-78. However, those protections adhere only when the disciplinary action implicates a protected liberty interest either by exceeding the sentence in "an unexpected manner" or where an inmate is subject to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Where no such protected liberty interest is at stake, the minimum requirements of due process apply, which require only that "the findings of the prison disciplinary board (be) supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985). In either case, if the loss of custody credits arising from the disciplinary action necessarily affects the duration of Plaintiff's sentence the claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997).[2]

Plaintiff was informed in the Court's previous dismissal order that the allegations he was falsely charged with possession of a deadly weapon in violation of CDCR policies,

---

[2] In *Heck* the Court held that where success on a prisoner's § 1983 action would necessarily impact the validity of a conviction or duration of a sentence the prisoner must first invalidate the underlying conviction or sentence. 512 U.S. at 480-82. In *Balisok* the Court applied *Heck*'s favorable termination requirement to a prisoner's § 1983 action alleging deprivation of good time custody credits. 520 U.S. at 643-47.

22cv0182-DMS (MDD)

rules and regulations, by itself, fails to state a 42 U.S.C. § 1983 due process claim because "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports." *Buckley v. Gomez*, 36 F.Supp.2d 1216, 1222 (S.D. Cal. 1997), aff'd, 168 F.3d 498 (9th Cir. 1999); *see also Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001) (holding that violations of prison rules and regulations, without more, do not support a § 1983 claim). This is because the procedural protections available in disciplinary proceedings adequately protect a prisoner's federal constitutional right to due process. *See e.g. Gadsden v. Gehris*, No. 20cv0470-WQH (DEB), 2020 WL 5748094, at *8 (S.D. Cal. Sep. 25, 2020) ("The allegations of the filing of false disciplinary charges by itself does not state a claim under 42 U.S.C. § 1983 because federal due process protections are contained in the ensuing disciplinary proceedings themselves.")

The Court notified Plaintiff that his original Complaint failed to state a due process claim because it lacked any allegations regarding what if any procedural due process protections Plaintiff received or failed to receive in connection to the October 5, 2020, disciplinary charge which resulted in the loss of 360 days of custody credits and prevented his immediate release from custody. (ECF No. 6 at 6.) Although Plaintiff indicates in the FAC that he has also forfeited 360 days of custody credits in connection to an August 24, 2021, RVR despite the fact that the disciplinary hearing has been postponed and not taken place, the FAC once again lacks any allegations regarding what if any procedural due process protections Plaintiff received or failed to receive in connection to the October 5, 2020, RVR disciplinary hearing. Plaintiff attaches to the FAC a CDCR Legal Status Summary indicating that effective October 5, 2020, and August 24, 2021, an "Administrative Loss (pending Disciplinary)" of 360 days has been "Applied" with respect to those two RVRs. (ECF No. 7-1 at 2.) Those documents indicate his current release date is August 21, 2023, calculated as of January 25, 2022. (*Id*. at 3.) Plaintiff alleged in his original Complaint that his original release date of February 26, 2022, had been changed to August 21, 2023, due to the October 5, 2020, RVR. (ECF No. 1 at 4.)

///

Plaintiff continues to claim his due process rights were violated in connection to the October 5, 2020, RVR based solely on his contention that Defendants Flores and Vega falsely charged him with possession of a deadly weapon, but without any allegations regarding whether and to what extent he received procedural due process protections. Because the FAC once again fails to set forth any allegations regarding what procedural protections, if any, Plaintiff received or was denied in relation to the October 5, 2020, RVR which forms the basis of his due process claims against Defendants Flores and Vega, Plaintiff has once again failed to state a due process claim against those Defendants.

The allegation in the FAC against Defendant CDCR that Plaintiff forfeited 360 days of custody credits without a hearing in relation to the August 24, 2021, RVR, fails to state a claim because Plaintiff fails to allege the credit forfeiture has been invalidated. Although Plaintiff alleges he is currently pursing habeas relief in connection to his loss of custody credits, he was previously informed in this Court's order dismissing his original Complaint that he must allege he has successfully invalidated the loss of credits because claims of constitutional violations related to the "circumstances" of a prisoner's confinement are brought in a civil rights action under 28 U.S.C. § 1983, while constitutional challenges to the validity or duration of a prisoner's confinement must be raised in a petition for federal habeas corpus under 28 U.S.C. § 2254. *Muhammad v. Close*, 540 U.S. 749, 750 (2004), citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc) ("The Court has long held that habeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983 action."), citing *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). A claim based on "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," is not cognizable under § 1983 unless Plaintiff "prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 486-87. The *Heck* favorable termination

rule applies to prison disciplinary action which results in the loss of custody credits or otherwise extends a prisoner's sentence. *Balisok*, 520 U.S. at 646-48 (applying *Heck* bar where the "defect complained of by [plaintiff] would, if established, necessarily imply the invalidity of the deprivation of [his] good-time credits."); *Preiser*, 411 U.S. at 498-99 (holding that a writ of habeas corpus is "explicitly and historically designed" to provide a state prisoner with the "exclusive" means to "attack the validity of his confinement" in federal court).

The Fourteenth Amendment due process claim in the FAC is dismissed for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b) because Plaintiff has failed to allege a lack of procedural due process in connection to his October 5, 2020, disciplinary infraction, and because Plaintiff does not allege the loss of custody credits arising from either RVR has been invalidated by way of administrative or direct appeal, executive order, or through the issuance of either a state or federal court writ of habeas corpus.

### 2. Eighth Amendment Claim

The FAC, as with the original Complaint, also once again fails to plausibly allege an Eighth Amendment claim for cruel and unusual punishment because there are no allegations regarding Plaintiff's conditions of confinement. "[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." *Id.,* quoting *Wilson*, 501 U.S. at 302-03. A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

/ / /

Although Plaintiff alleges he was placed in ASU for ten days as a result of his October 5, 2020, disciplinary charge, the FAC, like the original Complaint, contains no allegations he was subject to conditions of confinement giving rise to an Eighth Amendment claim.  "The circumstances, nature, and duration" of the conditions in ASU must rise to the level of "extreme deprivations" as opposed to "routine discomfort inherent in the prison setting" in order to violate the Eighth Amendment.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *see also Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) ("[W]hile conditions of confinement may be, and often are, restrictive and harsh," only conditions which are "devoid of legitimate penological purpose . . . or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment."), citing *Hudson v. Palmer*, 468 U.S. 517, 548 (1984); *see Farmer*, 511 U.S. at 834 (an Eighth Amendment violation occurs where a prisoner is denied "the minimal civilized measure of life's necessities."); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (an Eighth Amendment violation requires an objectively grave deprivation of humane conditions of confinement); *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.")  Mere allegations that Plaintiff was charged with and convicted of disciplinary infractions or placed in the ASU does not support an Eighth Amendment claim.  *See e.g.*, *Collins v. Williams*, 536 F.App'x 706, 707 (9th Cir. 2013) (finding that "neither the issuance of disciplinary charges of which Collins was later acquitted - nor his placement in administrative, protective, and disciplinary segregation for almost six months - constituted cruel and unusual punishment); *Ivy v. Wingo,* No. 20cv1345-CAB (AHG), 2020 WL 5709278, at *8 (S.D. Cal. Sept. 24, 2020) (*sua sponte* dismissing prisoner's challenge to disciplinary conviction for possession of contraband as "cruel and unusual punishment.")

Accordingly, the Eighth Amendment claim in the FAC is dismissed for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

### 3. Equal Protection Claim

"The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976). "Intentional discrimination means that a defendant acted at least in part *because* of a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994).

Plaintiff alleges that: "I am an African American Muslim and I believe that c/o Flores falsified her RVR report based on my racial ethnicity, my Islamic beliefs, and with the specific intent to retaliate against me for a civil lawsuit settlement I received $1,500 in 2018 for when I sued another correctional officer. I believe that c/o E. Vega racially discriminated against me when he failed to inform c/o A. Flores that I was using my 'altered razor' to cut my hair." (ECF No. 7 at 3.) He also alleges: "I was singled out by these two officers because of my race, my religion, and the proximity of my release dates that they could extort me for information and any refusal to cooperate would send me to ASU. C/o A. Fores and E. Vega would never attempt to extort any Hispanic inmate for information because they know the repercussion that the southside gang members would initiate for such actions. However Black inmates are threatened, extorted, bullied, and retaliated against methodically by c/os at Calipatria prison." (*Id.* at 7.)

Although Plaintiff adequately alleges membership in a protected class for equal protection purposes, *see Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) (identifying "race, alienage, national origin, [and] sex" as examples of characteristics protected by the Equal Protection Clause), his allegation that Defendants intentionally discriminated against him *because of* his membership in a protected class is insufficiently conclusory. *See Maynard*, 37 F.3d at 1404 ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status."); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps some otherwise class-based, invidiously discriminatory animus behind the

[defendant]'s actions.")  The only allegation in the FAC as to why Plaintiff believes he was discriminated against because of his race and religion is his belief that Defendants would not attempt to extort Hispanic inmates in the same manner as they extort Black and Muslim inmates for information regarding prison offenses due to feared repercussions from Hispanic prison gangs.  Without specific *factual* allegations supporting the basis for Plaintiff's knowledge or belief in that regard, his conclusory allegation does not plausibly state an equal protection claim.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (holding the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."); *Mitchell v. Las Vegas Metropolitan Police Dept., et al.*, 2021 WL 808735, *5 (D. Nev. Mar. 3, 2021) (finding plaintiff's identification as an "African American" and a "[B]lack man" insufficient by itself to suggest defendants "acted with an intent or purpose to discriminate" against him based on race).

Accordingly, the equal protection claim in the FAC is dismissed for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

### 4. Retaliation Claim

Finally, Plaintiff alleges he was sent to ASU for ten days and charged with possession of a deadly weapon rather than possession of contraband in the October 5, 2020, RVR for refusing to give in to the extortion demand of Defendants Flores and Vega to cooperate with them and tell them where they could find a cellphone at the prison.  (ECF No. 7 at 3, 7.)  He claims he was retaliated against for that refusal to cooperate, because he received $1,500 in a 2018 civil lawsuit settlement when he sued another correctional officer, and due to the proximity of his imminent release date.  (*Id.*)

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (2005). The adverse action need not be an independent constitutional violation. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.")  A prisoner must allege a retaliatory motive, that is, a causal connection between the adverse action and his protected conduct. *Watison*, 668 F.3d at 1114.  An "adverse action" is an action causing "harm or a threat of harm that would deter a person of ordinary firmness from protected activities." *Rhodes*, 408 F.3d at 568-69.

Plaintiff's allegation that the disciplinary charge was increased from possession of contraband to possession of a deadly weapon in retaliation for his failure to cooperate or success on his lawsuit is sufficient for screening purposes to allege Defendants Flores and Vega took an adverse action against him because of his protected conduct which chilled the exercise of his First Amendment rights and did not reasonably advance a legitimate correctional goal.  *Rhodes*, 408 F.3d at 567-68; *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) ("Authorizing false reports against plaintiff for the purpose of subjecting him to disciplinary measures is sufficient to constitute adverse action.")  Plaintiff plausibly alleges his charge of possession of a deadly weapon did not advance a legitimate penological goal because he alleges other inmates found in possession of an altered razor who do not use it as a weapon are, and are required under CDCR regulations to be, merely charged with possession of contraband.  *See Sheppard v. Quillen*, 840 F.3d 686, 692 (9th Cir. 2016) ("[A] prison official who uses a valid procedure as subterfuge to obscure retaliation 'cannot assert that (his action) served a valid penological purpose, even though (the prisoner) may have arguably ended up where he belonged.'"), quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).  Thus, with respect to Plaintiff's retaliation claim against Defendants Flores and Vega the allegations in the FAC "are sufficient to meet the low threshold for proceeding past the screening stage."  *Wilhelm*, 660 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Rhodes*, 408 F.3d at 567-68.  Plaintiff is entitled to have the U.S. Marshal effect service of the summons and FAC on his behalf against Defendants Flores and Vega.  *See* 28 U.S.C.

§ 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.")  However, the sua sponte screening process is "cumulative of, not a substitute for, any subsequent [motion to dismiss] that the defendant may choose to bring."  *Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal. 2007).

Plaintiff's allegation that Defendant CDCR retaliated against him by taking away 360 days of custody credits consists, in its entirety, of: "My due process was violated, and retaliation by the CDCR."  (ECF No. 7 at 2.)  Such wholly conclusory allegations fail to state a claim against Defendant CDCR.  *See Iqbal,* 556 U.S. at 678 (holding that the "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting the plausibility standard for pleading a § 1983 claim); *Hentz v. Ceniga*, 402 F.App'x. 214, 215 (9th Cir. 2010) (conclusory allegations of retaliation are insufficient to state a claim).

Accordingly, the First Amendment retaliation claim in the FAC against Defendant CDCR is dismissed for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

### D.   Plaintiff's Options

Because the Court has determined that Plaintiff's First Amendment retaliation claim against Defendants Flores and Vega survives the *sua sponte* screening process but his remaining claims do not, it will give Plaintiff the opportunity to (1) notify the Court of his intent to proceed only with the First Amendment claim in the FAC against Defendants Flores and Vega; or (2) file a Second Amended Complaint that attempts to correct the deficiencies of pleading identified in this Order.  Plaintiff must choose one of those options within forty-five (45) days from the date this Order is filed.  If Plaintiff notifies the Court he wishes to proceed only with his claims against Defendants Flores and Vega, the Court will issue an Order directing the U.S. Marshal to effect service of his FAC on Defendants Flores and Vega and dismiss all remaining claims and Defendants from this action.

## IV.   Conclusion and Orders

Good cause appearing, the Court:

1.   **DISMISSES** all claims in Plaintiff's First Amended Complaint against all Defendants without prejudice and with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) with the exception of the First Amendment retaliation claim against Defendants Flores and Vega.

2.   **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either (1) notify the Court of his intention to proceed with his First Amendment retaliation claim against Defendants Flores and Vega only; or (2) file a Second Amended Complaint that cures the deficiencies of pleading noted in this Order.  Plaintiff's Second Amended Complaint must be complete by itself without reference to any previous version of his Complaint.  Any Defendants not re-named and any claims not re-alleged in the Second Amended Complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")

**IT IS SO ORDERED**.

Dated:  May 12, 2022

Hon. Dana M. Sabraw, Chief Judge
United States District Court