1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY EUGENE SCALLY, <br><br> Plaintiff, <br><br> v. <br><br> CORRECTIONAL OFFICERS A. FLORES and E. VEGA, <br><br> Defendants. | Case No.:  22cv0182-DMS-MDD <br><br> REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS <br><br> [ECF. No. 20] |

Plaintiff Tony Eugene Scally is a state prisoner, proceeding pro se and *informa pauperis* ("IFP") in a First Amendment retaliation claim against two correctional officers pursuant to 42 U.S.C. § 1983.  Plaintiff challenges a prison disciplinary action that led to his conviction for possession of a deadly weapon as a result of an altered razor blade found in his cell on October 5, 2020.  Defendants move to dismiss the claim pursuant to Federal Rules of Civil Procedure 12(b)(6).

## I.    **Procedural Background**

Plaintiff's initial complaint filed on February 7, 2022 alleged numerous constitutional and state law claims against two correctional officers and another defendant.  (ECF No. 1).  As part of its initial screening process, the

Court dismissed that complaint for procedural and substantive pleading errors and permitted Plaintiff to file an amended complaint, which he did on April 18, 2022.  (ECF Nos. 6-7).  Another screening review on May 12, 2022 led to the dismissal of all but one claim.  (ECF No. 8).

At issue here is the surviving First Amendment retaliation claim. Plaintiff alleges a disciplinary action against him was in retaliation for a successful complaint he lodged against a correctional officer in 2018, where Plaintiff recovered $1500 in damages.  (ECF No. 7 at 3).  Plaintiff contends Defendants sent him to the administrative segregation unit (the "ASU") for ten days to retaliate against him for his successful complaint, and because he refused to snitch on fellow prisoners by revealing the location of contraband in the prison building, after they discovered an altered razor blade in his cell. Plaintiff claims that his prison release date of February 26, 2022 was only 16 months away at the time of the 2020 razor incident, and Defendants "used that as leverage to extort me, intimidate me, and retaliate against me." (*Id.* at 5; *see also* ECF No. 7-1 at 2 [Legal Status Summary noting current release date of August 21, 2023] *compare with* ECF No. 1 at 4, 16 [Compl. and Legal Status Summary noting prior release date of February 26, 2022]).

In addition to spending ten days in the ASU, the disciplinary charge against Plaintiff resulted in the loss of 360 days of custody credits and a referral for criminal prosecution.  Plaintiff entered a *nolo contendere* plea in Imperial County Superior Court to possession of a deadly weapon and was sentenced to two-years' time-served on July 7, 2022.  (ECF No. 7).  *People v. Tony Scally*, Case No. JCF004814 (Imperial Cnty. Super. Ct.).

On September 2, 2022, Defendants filed the current motion to dismiss. (ECF No. 20).  Plaintiff's opposition was due September 30, 2022.  (ECF No. 22).  Plaintiff did not file an opposition, but on October 27, 2022, he filed a

22cv0182-DMS-MDD

personal Declaration (sealed and dated October 17, 2022), with exhibits attached.  (ECF No. 26).  Defendants maintain that Plaintiff's Declaration was untimely and invalid, but they filed a reply on November 10, 2022.  (ECF No. 27).

This Report and Recommendation is submitted to United States District Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.  For the reasons set forth herein, the Court **RECOMMENDS** Defendants' motion be **GRANTED** in part and **DENIED** in part.  The motion should be **GRANTED**, and Plaintiff's retaliation claim barred, to the extent Plaintiff challenges his term of confinement; he may only pursue such relief in a habeas proceeding.  The motion should be **DENIED**, and Plaintiff should be permitted to proceed with his retaliation claim, to the limited extent he challenges his conditions of confinement in the ASU.

## II.   <u>Factual Background</u>

Plaintiff is serving a determinate fifteen (15) year sentence for an unrelated criminal conviction.  (ECF No. 7-1 at 3-4).  At all relevant times, Plaintiff was incarcerated at Calipatria State Prison.  (ECF No. 7 at 1).  On October 5, 2020, Defendant Correctional Officers Flores and Vega entered Plaintiff's cell and discovered an "altered razor."  (*Id.* at 4).  The altered razor was on Plaintiff's shelf in plain sight, and Plaintiff was not in his cell when Defendants discovered it because he was in the shower.  (ECF No. 7 at 4; ECF No. 7-1 at 8).  Plaintiff validly received three state-issued razors with bright orange handles earlier that morning, which he later modified for the purpose of cutting his own hair.  (ECF No. 7-1 at 8).  Prisoners were allowed razors during the pandemic.  (*Id.*; ECF No. 7 at 4).

1    Plaintiff admittedly "broke the guard off the state issued razor and
2    reattached the blade to the razor handle" by securing it with a piece of string
3    to assure the blade stayed in place for this haircut.  (ECF No. 7-1 at 8).
4    Defendant Vega observed Plaintiff using the razor to cut his hair earlier that
5    morning and, therefore, "would know that it was not intended as a weapon."
6    (*Id*.).  There is no evidence Plaintiff tried to use the razor as a weapon, and he
7    has no history of possessing weapons during his prior 13 years in prison.
8    (ECF No. 7 at 4).

9    Plaintiff claims Defendants failed to follow California Department of
10   Corrections and Rehabilitation ("CDCR") policies, rules and regulations by
11   falsely charging him with a Rules Violation Report ("RVR") for possession of a
12   deadly weapon instead of the lesser and more appropriate charge of
13   possession of dangerous contraband.  (ECF No. 7 at 4, 6).  The lesser charge
14   of possessing dangerous contraband would not have subjected Plaintiff to
15   criminal prosecution or the 360-day loss of credited time.  (ECF No. 7-1 at 9).

16   Plaintiff maintains that Defendant Flores filed the heightened charge
17   against him, while Defendant Vega knowingly failed to correct the charge,
18   allowing Flores to lie when she classified the altered razor as a deadly
19   weapon instead of dangerous contraband.  (ECF No. 7 at 8).  Defendants were
20   "willing to overlook" the altered razor, and not send Plaintiff to the ASU, if
21   Plaintiff disclosed other inmates with contraband.  (*Id*. at 3).  Defendant
22   Vega told Plaintiff "that if [Plaintiff] didn't want to go to ASU then [Plaintiff]
23   should tell him where he can locate a cellular phone at in 2 building."  (ECF
24   No. 7-1 at 8).  "Defendant Vega made it extremely clear that he had the
25   power" to let Plaintiff return to his cell "if [Plaintiff] gave him information on
26   any inmate who had a cellphone."  (*Id*. at 5).  Because of Plaintiff's successful
27   complaint against another correctional officer, when Plaintiff refused to

22cv0182-DMS-MDD

snitch on an inmate, Defendants sent him to the ASU, and then pursued the charge that resulted in his loss of custody credits and felony conviction.  (*Id*. at 5).  Plaintiff filed a 602 complaint against Defendant Vega, but never got a response.  (ECF No. 7-1 at 8).

Plaintiff's amended complaint attaches prison regulations, documents and a report that align with his version of the events.  First, he presents a February 21, 2002 Memorandum from the Department of Corrections and Rehabilitation that addresses the unauthorized possession of razor blades by inmates.  (ECF No. 7-1 at 9).  That document states:

> Incidents involving inmates housed in general population having unauthorized possession of a razor blade altered from its original manufactured state should be evaluated on a case-by-case basis. Absent evidence or information which would indicate the razor blade was **intended to be used as a weapon**, **a more appropriate charge in these types of instances may be "Possession of Contraband,"** as described in CCR, Section 3323(e)(3), a Division "C" offense.

(*Id*.) (emphasis added).  Plaintiff maintains there is no evidence his altered blade was intended to be used as a weapon.  Second, he attaches regulations that define "dangerous contraband" as "substances . . . that have been altered from their original manufactured state or purpose and which could be fashioned into a weapon."  (*Id*.).  Plaintiff argues that description clearly fits the character of his altered razor, yet that was not the charge raised against him.  (ECF No. 26-2 at 2).

Third, Plaintiff relies upon a section of the Penal Code that defines a deadly weapon by enumerating certain specific items, and incorporating into the definition "any item not readily identified in Penal Code 4502 . . . **when used in a manner that could reasonably result in serious bodily injury** or death."  (*Id*.) (emphasis added).  According to Plaintiff, Defendants'

retaliatory motive is evinced by those regulations because Defendants discovered his altered razor sitting on a shelf while he showered – not "when used in a manner that could reasonably result in serious bodily injury or death." (*Id*.).

Lastly, Plaintiff attaches portions of a decision from the Inmate Classification Committee ("ICC") that evaluated Plaintiff's placement in the ASU after the altered razor incident. The ICC concluded the alleged "deadly weapon" should be considered "dangerous contraband," and returned Plaintiff to the general population after ten days in the ASU. (ECF No. 26 at 1). The ICC letter states, "the weapon appears to be more of possession of dangerous contraband and no prior SHUable offenses." (ECF No. 26-3 at 3). Plaintiff is currently seeking habeas relief to restore his 360 days of custody credits lost in connection with the offense at issue, which was charged as RVR No. 7034748. (*Id*. at 3-4, 7-8). The amended complaint seeks monetary damages and an injunction preventing Defendants' retaliation. (ECF No. 7 at 10).

### III.   Legal Standards

#### A. *Constitutional Challenges Pursuant to 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B. *Rule 12(b)(6) Motion to Dismiss & Judicial Notice*

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citation omitted).

Dismissal is proper where the complaint does not contain enough factual allegations, when taken as true, to establish "plausible," as opposed to merely "possible" or "speculative," entitlement to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although detailed factual allegations are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating a motion to dismiss under Rule 12(b)(6), a court must assume the truth of the facts presented and construe all inferences from them in the light most favorable to the nonmoving party.  *Erickson*, 551 U.S. at 94.

Generally, when ruling on a motion brought under Rule 12(b)(6), "a district court may not consider any material beyond the pleadings." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994).  A court may, however, consider "material which is properly submitted as part of the complaint" without converting a motion to dismiss into a motion for summary judgment."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).  A court may also consider documents that are not physically attached to the complaint, as long as their "authenticity . . . is not contested" and the complaint "'necessarily relies' on them."  *Id.* (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)).

Pursuant to Fed. R. Evid. 201, a court may properly consider judicially noticeable "matters of public record."  Fed. R. Evid. 201(b)(2) (facts are judicially noticeable when they are not subject to reasonable dispute and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Reyn's Pasta Bella LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.") (citation omitted).  Courts within this circuit have found that such judicially noticeable documents include the docket entries in a state court criminal case.  *See Borsotti v. California*, 15–04112 JAK (AFM), 2016 WL 2865361, at *4 (C.D. Cal. Mar. 25, 2016) (taking judicial notice of the docket and the complaint in plaintiff's state court criminal action); *accord Eli Lilly & Co. v. Gitmed*, 1:16-cv-00178-DAD-SAB, 2017 WL 1740132, at *3 (E.D. Cal. May 4, 2017) (taking judicial notice of docket entry in plaintiff's criminal case in assessing proper restitution).

The Court takes judicial notice of Plaintiff's plea to a division A-1 offense, his subsequent conviction for possession of a deadly weapon by a prisoner in violation of CAL. PENAL CODE § 4502(a), and the state regulations governing that offense.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) ("under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record'"); *Miles v. State of California*, 320 F.3d 986, 987 n.1 (9th Cir. 2003) (taking judicial notice of related state court proceedings).  (*See* ECF No. 21 and attached exhibits).

### *C. Standards for Pro Se Litigants*

A pro se litigant is not excused from following applicable procedural rules.  *See Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1997) ("pro se litigants are not excused from following court rules").  As the Ninth Circuit has consistently stated, however, "[l]itigants have a statutory

22cv0182-DMS-MDD

right to self-representation in civil matters," and they must be afforded liberal construction in their pleadings, including their motions, in order to ensure they have meaningful access to the courts. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (pro se pleadings "are held to less stringent standards than [those] drafted by lawyers"); *cf. Jones v. Blanas*, 393 F.3d 918, 935 (9th Cir. 2004) (holding that it would be an abuse of discretion for a district court not to consider evidence offered by a pro se plaintiff in opposition to a summary judgment for the first time in objections to the court's proposed findings and recommendations); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) ("Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel."). Moreover, there is a strong public policy in favor of deciding cases on their merits whenever reasonably possible. *See Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002).

## IV.   <u>Discussion</u>

Defendants move for dismissal under Rule 12(b)(6) on two grounds: (1) Plaintiff's claim is barred by the favorable determination rule set forth in *Heck v. Humphrey* because a judgment in Plaintiff's favor would undermine the validity of his criminal conviction and loss of custody credits; and (2) Plaintiff cannot establish his disciplinary charge failed to serve a valid penological purpose, as required to prove a retaliation claim. (ECF No. 20 at 8).

As a preliminary matter, the court finds that Plaintiff's failure to file a responsive document by the prescribed deadline constitutes excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B) (stating that a court may extend the time for filing a response where a party's failure to meet a deadline was due to excusable neglect); *see also Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th

Cir. 2013) (stating that a court must construe liberally a pro se plaintiff's filings); *Brophy v. JPMorgan Chase Bank, N.A.*, 2:14-cv-0411-TOR, 2015 WL 6511627, at *2 (E.D. Wash. Oct. 28, 2015) ("The Court construes Plaintiffs' act of filing a late response as a request to consider their brief past the deadline.").  Since the pandemic began, the Court has seen a significant increase in inmates' motions for extensions of time and late filings related to complications and delayed prison procedures, as likely was the case here. The Court's consideration of Plaintiff's response will not prejudice Defendants because they had the opportunity to file a reply that substantively addressed the response.  *See Brophy*, 2015 WL 6511627, at *2 (finding "minimal prejudice" where the other party "was still afforded a chance to file a reply").  Advancing the public policy of resolution on the merits, the Court will consider Plaintiff's Declaration as a valid response to the motion to dismiss.  (ECF No. 26).

### A. *Heck's Favorable Determination Rule Only Forecloses Plaintiff's Challenge to the Term of His Confinement, Not the Conditions of Confinement in the ASU*

1. <u>*Heck* Bars Plaintiff's Constitutional Challenge Only as to the Duration/Term of His Confinement</u>

In *Heck v. Humphrey*, the Supreme Court established that a claim brought under 42 U.S.C. § 1983 must be dismissed if judgment in favor of a plaintiff would undermine the validity of a conviction or sentence, unless a plaintiff can demonstrate that the conviction or sentence has already been invalidated.  512 U.S. 477, 486-87 (1994).  A defendant has the burden of demonstrating that *Heck* bars a plaintiff's § 1983 claim.  *Luster v. Amezcua*, 1:16-cv-00554- LJO-GSA-PC, 2019 WL 1442992, at *7 (E.D. Cal. Apr. 1, 2019) (citation omitted).  Courts have extended the holding in *Heck* to First

Amendment retaliation claims arising out of allegedly false disciplinary charges. *See Turner v. Sullivan*, 821 F. App'x 835, 836 (9th Cir. 2020) (affirming dismissal of First Amendment retaliation claim under *Heck*, which alleged that defendants issued a false disciplinary charge against plaintiff that resulted in the loss of thirty days of credits); *Luster*, 2019 WL 1442992, at *8 (dismissing prisoner's First Amendment retaliation claim under *Heck*, because finding in plaintiff's favor "would necessarily imply the invalidity" of the criminal conviction and disciplinary punishment because plaintiff's theory depended on a finding that the charges against her were false).

*Heck's* bar applies in the prison disciplinary context if the "defect complained of by [Plaintiff] would, if established, necessarily imply the invalidity of the deprivation of [his] good-time credits[,]" *Edwards v. Balisok*, 520 U.S. 641, 646 (1997), and if the restoration of those credits would necessarily "affect the duration of time to be served." *Muhammed v. Close*, 540 U.S. 749, 754 (2004); *see also Nettles v. Grounds*, 830 F.3d 922, 929 n.4 (9th Cir. 2016) (en banc) ("*Heck* applies only to administrative determinations that 'necessarily' have an effect on 'the duration of time to be served.'" (citation omitted)).

"In evaluating whether claims are barred by *Heck*, an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'" *Cunningham v. Gates*, 312 F.3d 1148, 1153–54 (9th Cir. 2002) (quoting *Heck*, 512 U.S. at 487 n.6). Thus, a plaintiff's claims are barred when they depend on a theory that calls into question whether he committed the offense for which he was convicted. *Luster*, 2019 WL 1442992, at *7. Consequently, "the relevant question is whether success in a § 1983 suit would 'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence." *Ellis v.*

*Thomas*, No. 14-cv-00199-JCS, 2015 WL 5915368, at *3 (N.D. Cal. Oct. 9, 2015) (citing *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (en banc)).

Here that answer is clear as to *part* of Plaintiff's allegations and claim. A finding that Plaintiff was falsely charged with an A-1 offense for retaliatory reasons would necessarily invalidate his offense and conviction, and negate the forfeiture of his confinement credit. This Court cannot simultaneously find that Defendants unlawfully retaliated against Plaintiff by bringing the deadly weapon charge instead of the dangerous contraband charge but permit the prior conviction to stand. Proof of a retaliatory motive related to that charge necessarily invalidates the deadly weapon conviction and subsequent penalties, and thus is barred by *Heck*. Plaintiff is not, however, without a remedy with respect to the extended duration of his confinement. And, the conviction and confinement is not all that he challenges here.

First, contrary to Defendants' assertion that *Heck* applies to a *nolo contendere* plea, the Court notes the majority view is to the contrary. *Lockett v. Ericson*, 656 F.3d 892, 897 (9th Cir. 2011) (*Heck* does not bar a § 1983 claim for unlawful search because the plaintiff pled no contest to the charge on which the defendant based its *Heck* preclusion argument.); *Jackson v. Barnes*, 749 F.3d 755, 760 (9th Cir. 2014) ("[In *Lockett*,] a plaintiff who pled *nolo contendere* to reckless driving was not *Heck*-barred from bringing a § 1983 claim based on an alleged unlawful search because the outcome of the claim had no bearing on the validity of the plaintiff's plea."); *Hilson v. Arnett*, No. 1:15cv01240-DAD-MJS(PC), 2017 WL 1375219, at *4 (E.D. Cal. Apr. 17, 2017), *report and recommendation adopted*, 2017 WL 1956729 (E.D. Cal. May 11, 2017) ("The majority of district courts that have addressed the issue have noted that *Lockett* represents the most recent Ninth Circuit precedent, and

12

have simply concluded that *Lockett* means what it says: convictions based on no contest pleas are not *Heck* barred under *Lockett's* rationale).  Second, Plaintiff has already instituted a habeas corpus challenge to restore his confinement credits, and if successful at invalidating his prison disciplinary sanction, Plaintiff is not foreclosed from a subsequent constitutional challenge pursuant to § 1983.

To the extent Plaintiff's amended complaint challenges the fact and duration of his confinement in this § 1983 action, however, Defendants correctly state that Plaintiff's claim is barred by *Heck*.  *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) ("A state prisoner cannot challenge the fact or duration of his/her confinement in a Section 1983 action; his/her sole remedy lies in habeas corpus relief.").  He may not challenge his administrative charge, felony conviction, or the forfeiture of good time credits in this retaliation claim.  Plaintiff's amended complaint, however, alleges more.

2. <u>*Heck* Does Not Bar Plaintiff's Challenge to the Conditions of His Confinement in the ASU</u>

State prisoners can bring § 1983 actions when their lawsuits do not collaterally attack the duration of their confinement or a conviction.  For instance, when a prisoner is serving a life term, or if success in a § 1983 lawsuit does not cause an immediate release or a shorter stay in prison then a claim does not necessarily seek to alter the duration of confinement.  *Luster*, 2019 WL 1442992, at *6 n.12.  "A section 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody."  *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003) (citation omitted).  Prisoners challenging the conditions of their confinement are not automatically barred from bringing suit under § 1983 without first obtaining

a writ of habeas corpus because "the favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement." *Id.*

Here, separate and distinct from the allegations that are barred by *Heck* (*i.e.,* Plaintiff's conviction for possessing a deadly weapon, his administrative charge, and the loss of custody credits), is Plaintiff's claim that Defendants sent him to the ASU because he (1) successfully litigated a complaint against a correctional officer in the recent past, (2) refused to snitch on another inmate with contraband, and (3) was facing imminent release from his 15-year determinate sentence.  (ECF No. 7).

Regulations and prison documents attached to the amended complaint arguably suggest that, before bringing a disciplinary charge of the type involved here, correctional officers are encouraged (but not required) to consider (1) the lack of any past possession of dangerous weapons by the inmate, and (2) the lack of any use of the altered razor in a manner that could reasonably result in serious bodily injury or death.  Defendants did not do that.  When the ICC did so, it determined that possession of a dangerous weapon was the more fitting charge here.  Knowing that Plaintiff was subject to release from 15-years imprisonment in less than 16 months, Plaintiff plausibly states that Defendants leveraged his circumstances against him in retaliation for succeeding in a prior complaint against a correctional officer and refusing to snitch on a fellow inmate.

Despite the altered razor being outside Plaintiff's presence, in plain sight, and not used in a manner that could result in serious bodily injury, Defendants threatened and then proceeded to send Plaintiff to the ASU.  It is plausible that Plaintiff would not have faced any time in the ASU if he

22cv0182-DMS-MDD

cooperated with Defendants (even if they proceeded to charge him with possession of a deadly weapon).  Factual disputes govern whether Plaintiff's successful litigation against a prison guard, his refusal to snitch on a fellow inmate, and his impending release from custody played a role in Plaintiff's placement in the ASU for ten days, and that aspect of his claim is not *Heck*-barred.  *Muhammad*, 540 U.S. at 754 (discussing the "mistaken view expressed in Circuit precedent that *Heck* applies categorically to all suits challenging prison disciplinary proceedings).

Those events arguably present a separate factual predicate from Defendants' subsequent possession of a deadly weapon charge, Plaintiff's conviction, and the lost credits that later resulted.  *See generally Kamali v. Stevens*, 1:19cv01432-JLT-GSA(PC), 2022 WL 4593052, at *2 (E.D. Cal. Sept. 30, 2022) (stating in case involving battery and excessive force that "where a complaint alleges a continuous chain of events with two separate factual predicates . . . *Heck* would not operate as a bar").

Defendants incorrectly assume that because Plaintiff concedes his conduct was a violation of the lesser dangerous contraband offense, the only issue presented in the case is Plaintiff's term of confinement.  (ECF No. 20 at 16).  The conditions Plaintiff endured in the ASU do not necessarily relate to the fact of his conviction nor duration of punishment.  Defendants also incorrectly contend that because Plaintiff fails to allege the lesser charge would have averted his placement in the ASU, *Heck* bars his retaliation claim.  (*Id.*).  Assuming Plaintiff's allegations are true, as the Court must do, Defendants offered not to send Plaintiff to the ASU if he snitched on inmates with cellphones.  When he did not comply, Defendants retaliated against him because of his prior successful complaint against a correctional officer and sent Plaintiff to the ASU.  That action affected a condition of confinement,

1    not a term of confinement.

2         Whether Plaintiff was also charged in the Defendants' discretion with a

3    heightened offense, convicted, and then lost good time credit are factors

4    distinct from Defendants' decision to send him to the ASU in retaliation for

5    protective conduct.  Plaintiff's legal challenge to placement in the ASU does

6    not necessarily implicate his possession of the altered razor, regardless of

7    how that charge was characterized.  *See Puckett v. Zamora*, 12-cv-00948-

8    DLB-PC, 2015 WL 757330, at *4 (E.D. Cal. Feb. 23, 2015) (finding plaintiff's

9    excessive force claim regarding an initial takedown barred by the favorable

10   termination rule and dismissing that portion of the claim only; allowing to

11   proceed plaintiff's "claims that once he was taken to the ground, Defendants

12   used excessive force against him by physically beating him while he was

13   restrained[,] . . . punched [p]laintiff while he was on the ground," and that

14   other defendants "stood by and watched as [p]laintiff screamed for help"); *see

15   also Johnson v. Gonzalez*, No. 9-cv-01264-AWI-BAM-PC, 2014 WL 3940088,

16   at *6 (E.D. Cal. Aug. 12, 2014) (finding "[p]laintiff's excessive force claim

17   regarding the initial takedown is barred by the favorable termination rule,

18   and this portion of his claim must be dismissed"; however, plaintiff's

19   allegations "that after the initial takedown, he was struck by [d]efendants . . .

20   numerous times before losing consciousness" survived summary judgment),

21   *report and recommendation adopted*, 2014 WL 4794968 (Sept. 25, 2014).

22        Plaintiff may argue about and attempt to show the circumstances that

23   surrounded the Defendants' decision to charge a deadly weapon offense, but

24   Plaintiff may not challenge the deadly weapon offense itself or the

25   confinement terms associated with that offense.  *Cf. Wiseman v. Williams*,

26   No. CV 20-11813-VBF(E), 2022 WL 2961670, at *12 (C.D. Cal. Jan. 20, 2022)

27   ("Because direct evidence of retaliatory intent rarely can be pleaded in a

22cv0182-DMS-MDD

complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal.").  To the limited extent Plaintiff's claim challenges his *conditions* of confinement in the ASU, rather than the *duration* or his conviction, it is cognizable under § 1983 and not barred by *Heck*.  *Ramirez*, 334 F.3d at 852 (reversing district court's dismissal under *Heck* to permit inmate's challenge to conditions of confinement because his § 1983 claim disputed a term of segregated confinement and would not necessarily invalidate a disciplinary action that affects the fact or length of confinement).

## B.  *Plaintiff Sufficiently Alleges Defendants' Retaliatory Action in Sending Him to the ASU Did Not Advance a Legitimate Correctional Goal*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (2005).  Because "retaliation claims by prisoners are 'prone to abuse' since prisoners can claim retaliation for every decision they dislike," *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996), the inmate bears the burden of setting forth facts that satisfy each and every element necessary for a prima facie case of retaliation.  *Rhodes*, 408 F.3d at 569; *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997).

The adverse actions here is Defendants' placement of Plaintiff in the ASU.  *Watison v. Carter*, 668 F.3d 1108, 1115 (9th Cir. 2012) (being placed in administrative segregation constitutes an adverse action).  The causal

connection includes Plaintiff's past, successful complaint against a correctional officer and Plaintiff's refusal to snitch on an inmate in exchange for avoidance of the ASU, both of which occurred in the context of Plaintiff's approaching release date.  Taken together, those activities could chill Plaintiff's First Amendment right to bring a complaint against correctional officers for wrongful conduct.

The Court rejects Defendants' effort to isolate Plaintiff's refusal to snitch as an invalid basis for protective First Amendment activity (*see* ECF No. 20 at 20), because failing to cooperate with Defendants is merely one component of the claim.  Plaintiff's allegations include his past legal success against another correctional officer, Defendants' awareness and use of the altered razor to cut his hair, the confiscation of the razor outside Plaintiff's presence, along with threats to send Plaintiff to the ASU for refusing to cooperate, and spending ten days in the ASU— all in the context of an impending release date that would be extended if Plaintiff did not cooperate. It is the chilling effect of that combined activity that is protected by the First Amendment.  *See Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.").

Here, the real dispute to the validity of a retaliation claim turns on whether Plaintiff plausibly alleges the adverse action did not reasonably advance a legitimate correctional goal.  Defendants contend that he does not. (ECF No. 20 at 17; ECF No. 26 at 4-5).  Defendants challenge the Court's prior screening order, which found that Plaintiff met that burden "because he alleges other inmates found in possession of an altered razor who do not use it as a weapon are, and are required under CDCR regulations to be, merely charged with possession of contraband."  (ECF No. 8 at 13).

In support of its previous finding in the screening order, this Court cited *Sheppard v. Quillen*, 840 F.3d 686, 692 (9th Cir. 2016).  The *Sheppard* inmate filed a § 1983 claim alleging an officer retaliated against him for reporting that officer's misconduct of using excessive force while escorting the inmate to his holding cell.  *Id*.  The officer defendant claimed the inmate was sent to segregation to protect the integrity of the investigation and to keep the inmate safe.  *Id*. at 691.  The *Sheppard* court rejected those reasons as valid penological goals in the context of a retaliation claim, calling them generic justifications.  The court reversed summary judgment in defendant's favor because the officer's transfer of the inmate to segregation suggested retaliation more than protection of the inmate or the investigation.  *Id*. at 692.  The Ninth Circuit explained that prison officials may not use a valid procedure "as a subterfuge to obscure retaliation."  *Id*.

By analogy here, whether Defendants charged Plaintiff with possession of dangerous contraband or a deadly weapon, they cannot use a valid process to coverup an effort to punish an inmate for refusing to snitch on another inmate or for bringing a successful complaint against a correctional officer. *Id*. (citing *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (prison officials may not abuse a valid procedure "as a cover or a ruse to silence and punish" an inmate)).

If Defendants used the altered razor as a cover or ruse to gain intelligence from Plaintiff and to punish him for succeeding in a complaint against a correctional officer, then sending Plaintiff to the ASU did not serve a valid penological purpose as Defendants suggest.  An inmate sufficiently alleges that conduct does not serve a legitimate correctional goal by arguing the Defendants' acts were a retaliatory, unreasonable exercise of prison authority.  *See Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).  Plaintiff

22cv0182-DMS-MDD

has done so here. *See Wiseman*, 2022 WL 2961670, at *13 (allegations that officer retaliated against inmate by filing a "fraudulent" RVR "to punish" Plaintiff for continuing to pursue his grievance suffice to plead the absence of any legitimate penological reason); *Watison*, 668 F.3d at 1115 (plaintiff sufficiently alleged absence of legitimate penological reasons by pleading that prison official "filed a false disciplinary complaint against him"); *Reed v. Paramo*, 2019 WL 398339, at *9 (S.D. Cal. Jan. 31, 2019) (plaintiff sufficiently alleged absence of legitimate penological reasons where plaintiff stated correctional officer only issued an RVR in retaliation to harass plaintiff).

Defendants also challenge Plaintiff's suggestion that CDCR policies *required* them to charge Plaintiff with the lesser dangerous contraband offense, arguing that no such requirement exists. (ECF No. 20 at 17-19). The issue is not whether a regulation requires *or* permits Defendants to charge Plaintiff's altered razor as dangerous contraband or a deadly weapon. Instead, a retaliatory motive for any charge that sent Plaintiff to the ASU is determinative as to whether Plaintiff sufficiently alleges the lack of a penological purpose in Defendants' conduct. *See generally Bruce*, 351 F.3d at 1289 ("if defendants abused the gang validation procedure as a cover or a ruse to silence and punish Bruce because he filed grievances, they cannot assert that Bruce's validation served a valid penological purpose, even though he may have arguably ended up where he belonged").

Defendants told Plaintiff that he could return to his cell if he cooperated with them. While Plaintiff concedes he possessed dangerous contraband, he nonetheless perceived a clear threat to be sent to the ASU in retaliation for not cooperating and for succeeding in his prior complaint against a correctional officer. (ECF No. 7-1 at 8). Plaintiff presents more than bare,

speculative allegations.  He attaches regulations that suggest his conduct could have fit within the lesser charge of possessing dangerous contraband. That information, coupled with Defendants' threat to place Plaintiff in the ASU, sufficiently challenges the existence of a valid correctional goal in Defendants' conduct.  There could be no legitimate goal for threatening Plaintiff in the manner he describes, assuming he can prove his retaliation claim.

Once a plaintiff makes "a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of . . . ." *Martin v. Hurtado*, 07cv0598 BTM (RBB), 2008 WL 4145683, at *6 (S.D. Cal. Sept. 3, 2008) (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006)).  At this stage, the Defendants' discretionary right to characterize Plaintiff's possession of an altered razor, sitting on his shelf while he showered, as a deadly weapon instead of dangerous contraband is insufficient to defeat Plaintiff's retaliation claim.

## V.   <u>Conclusion</u>

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) Approving and Adopting this Report and Recommendation; and (2) **GRANTING** in part, and **DENYING** in part, Defendants' Motion to Dismiss.  The motion should be **GRANTED**, and Plaintiff's retaliation claim barred, to the extent Plaintiff challenges his conviction or term of confinement.  Defendants' motion should be **DENIED**, and Plaintiff permitted to proceed with his retaliation claim pursuant to § 1983, based on allegations related to his conditions of confinement in the ASU.

**IT IS HEREBY ORDERED** that any written objections to this Report

must be filed with the Court and served on all parties no later than **February 14, 2023**. The document should be captioned "Objections to Report and Recommendation."

     **IT IS FURTHER ORDERED** that any reply to the objection shall be filed with the Court and served on all parties no later than **February 28, 2023**. The parties are advised that the failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

     **IT IS SO ORDERED**.

Dated:   January 31, 2023

Hon. Mitchell D. Dembin
United States Magistrate Judge